IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| JESUS ZAMORA, § | |
|   *Plaintiff*, § | |
| v. § | |
| § | C.A. NO. C-08-187 |
| MICHAEL J. ASTRUE, § | |
|  *Commissioner of the* § | |
|   *Social Security Administration.* § | |

**ORDER ON CROSS MOTIONS FOR
SUMMARY JUDGMENT AND REMANDING CASE**

Plaintiff Jesus Zamora brought this action seeking review of the Commissioner's final decision that he is not entitled to Title II Disability Insurance Benefits ("DIB"), or Title XVI Supplemental Security Income Benefits ("SSI"), for the closed period of time from June 1, 2004 through November 19, 2007.[1] (D.E. 1). Defendant moves for summary judgment to affirm the Commissioner's decision and dismiss plaintiff's claims. (D.E. 11, 12, 14). Plaintiff has filed a response and cross-motion for summary judgment. (D.E. 13, 15). For the reasons stated herein, the Commissioner's decision is reversed and this case is remanded for further findings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**I.   JURISDICTION.**

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g).

**II.   BACKGROUND.**

 **A.   Procedural History.**

On September 14, 2004, plaintiff filed an application for disability insurance benefits with an

---

[1] Plaintiff is currently receiving benefits based on a subsequent application in which he was found disabled beginning November 20, 2007. (See D.E. 13 at 10).

1

alleged onset date of June 1, 2004. Tr. 11, 99. He alleged disability based on diabetes, neuropathy, toe ulcers, dizziness, blurred vision, hives and scoliosis. Tr. 89.

On February 18, 2005, plaintiff's application was denied. Tr. 92. Plaintiff moved for reconsideration, Tr. 90, and on March 23, 2006, the Social Security Administration ("SSA") denied his claim. Tr. 85. Plaintiff requested a hearing before an administrative law judge ("ALJ"), Tr. 84, and on August 1, 2007, a hearing was conducted. Tr 370-404. On November 19, 2007, the ALJ denied plaintiff's application. Tr. 8. Plaintiff appealed, Tr 8A, and on May 8, 2008, the Appeals Council affirmed the ALJ's decision, making it the final decision of the Commissioner. Tr 3.

Plaintiff filed this appeal on June 10, 2008. (D.E. 1).

### B.      Plaintiff's Medical Records.

Plaintiff is thirty years old and has a tenth-grade education. Tr. 11, 383. He has past relevant work as a restaurant worker. Tr. 15. He alleges disability based on diabetes complicated by neuropathy, ulcers, vision problems, hives, and scoliosis. Tr. 89.

On August 31, 2004, plaintiff underwent incision and drainage of his left great toe, performed by Dr. John McKeever, after he was diagnosed with osteomyelitis. Tr. 188. On September 3, 2004, he was discharged from the hospital with a final diagnosis of osteomyelitis and poorly controlled diabetes mellitus. Tr. 187. Dr. McKeever observed that plaintiff had a good recovery post-surgery, and that his blood sugar was well-controlled with medication.. Id.

On December 15, 2004, plaintiff's left great toe was amputated due to his osteomyelitis. Tr. 180. Dr. J. William Henry noted that plaintiff had tolerated the procedure well and had been placed on medication to control his blood sugar. Tr. 179. Plaintiff explained that he had run out of his diabetic medications two to three months before surgery, and had been using cocaine to control the pain. Id.

On March 31, 2005, plaintiff was admitted for osteomyelitis in his left second toe. Tr. 201.

On April 3, 2005, plaintiff's left second toe was amputated. Id. Dr. McKeever's post-surgery notes indicate a history of diabetes and alcohol abuse. Id. Plaintiff was discharged on April 4, 2005 with a good prognosis. Id.

On September 16, 2005, plaintiff presented to Dr. William Burgin with diabetic foot ulcers. Tr. 220. Dr. Burgin's diagnoses were sepsis, osteomyelitis, uncontrolled diabetes, and cocaine abuse. Id. He recommended a transmetatarsal amputation of the left foot. Id. Dr. Burgin discussed plaintiff's drug abuse on his diabetes, and plaintiff admitted to smoking marijuana daily. Id.

On September 27, 2005, plaintiff underwent a debridement, irrigation and packing of the infection in his left foot, as well as a partial resection of the fifth metatarsal head, rather than the recommended amputation. Tr. 235. The post-operative notes indicate that plaintiff had been incarcerated and had received inadequate wound care while in jail. Tr. 237.

On October 25, 2005, plaintiff consulted with Dr. McKeever for advice on managing his diabetes. Tr. 244. He claimed to have quit tobacco, alcohol and illicit drug use two months before the consultation. Id.

On February 20, 2006, plaintiff reported to Dr. Everett L. Gayle complaining of back pain. Tr 267. Objective evidence confirmed Baastrups's disease, L5-S1 rudimentary discs, and multifocal endplate Schmorl's nodes at L2-L5 as a basis for his back pain. Tr. 267.

On March 1, 2006, plaintiff underwent a disability evaluation by Dr. Rene Rodriguez in connection with his request for benefits. Tr 264-266. Dr. Rodriguez confirmed plaintiff's uncontrolled diabetes, foot ulcers, peripheral neuropathy, and Baastrup's disease. Tr. 265. Upon examination, Dr. Rodriguez noted that plaintiff was able to sit, stand, and move about. Tr 266. He could lift, carry, and handle small objects. Id. His hearing and speech were normal. Id. However, there was evidence of end organ damage to his nerves and feet. Id. Dr. Rodriguez noted that plaintiff's gait was limited due to left-foot toe loss, and also due to drainage of a left toe ulcer. Id.

Plaintiff's blood sugar was "extremely high" at 334, and plaintiff admitted he had not taken his medication because he could not afford it. Id. Plaintiff could not walk on his heels, toes, squat, hop, or do tandem walking. Id. Dr. Rodriguez concluded that "Mr. Zamora needs to get back into treatment of his diabetes in order to prevent further deterioration of his general health." Id.

On June 9, 2006, plaintiff was diagnosed with left foot cellulitis, uncontrolled diabetes, diabetic nephropathy, and diabetic neuropathy. Tr. 281. He was admitted to the hospital and placed on an aggressive regimen to control his diabetes. Id. Plaintiff was given a guarded prognosis given his long history of noncompliance. Id.

In August 2006, plaintiff underwent a left transmetatarsal amputation. Tr. 364.

On January 18, 2007, plaintiff was admitted for an ulcer on his left foot. Id. Dr. William Radunsky observed that plaintiff had a history of drug use in the past. Id. Plaintiff was diagnosed with cellulitis in his transmetatarsal amputation stump. Tr. 365. On January 25, 2007, he underwent irrigation and debridement of an infected ulcer on his left foot. Tr. 362.

On April 25, 2007, plaintiff was treated for an ulcer on his right great toe. Tr. 340. On April 27, 2007, Dr. Aneesa S. Majid diagnosed plaintiff with gangrene in his right great toe. Tr. 339. On April 28, 2007, plaintiff's right great toe was amputated. Tr. 335. On April 30, 2007, Dr. Allyson Larkin reported that plaintiff had poor peripheral pulses in his feet, and that his plantar feet were insensate. Tr. 354. She diagnosed plaintiff with severe peripheral neuropathy.

On June 25, 2007, plaintiff was diagnosed with gangrene in his right fifth toe, and the toe was removed by Dr. McKeever, who also did some work on the site of the great toe amputation, which was not entirely healed. Tr. 330.

On September 8, 2007, plaintiff underwent a right metatarsal amputation. Tr. 37. On November 15, 2007, the amputation was revised. Tr. 33.

On January 22, 2008, plaintiff was treated by Dr. Darrick Nelson for an ulcer on his left

metatarsal stump. Tr. 27. Dr. Nelson noted faint palpable pulses in both stumps and decreased sensation in both feet. Id.

        C.        **The August 1, 2007 Administrative Hearing.**

On August 1, 2007, ALJ Gary L. Vanderhoof held a hearing on plaintiff's disability claim. Tr. 372. Plaintiff was represented by his attorney, Kathleen Day. Id. A vocational expert, Donna Johnson, and a medical expert, Dr. Dorothy Leong, testified at the hearing. Id.

Dr. Leong testified that plaintiff did not meet or equal any of the listings. Tr. 375. She indicated that plaintiff had a long history of diabetes and noncompliance, and had undergone several amputations of the left foot, including amputations of the first and second toe. Id. She also reported that there was a recorded history of illicit drug use, but admitted that there were no laboratory reports confirming drug use. Tr. 376, 378. She opined that plaintiff would be capable of performing light work. Tr. 377. However, plaintiff should not work at unprotected heights, although he could occasionally climb ladders and scaffolds. Tr. 378.

Plaintiff testified that he had left his most recent job due to problems with his feet. Tr. 384. He explained that he had to leave that job after only two and a half weeks because his feet would swell and get blisters, which would then turn into ulcers. Id. This would happen every time he would try to go to work for a while. Tr. 385. He said that he could not stay on a job for more than a month due to the problems with his feet. Tr. 386. He had aching pains in his legs, but his legs were numb from the ankle down. Tr. 387. He testified that he would get dizzy and develop hives from working in the sun. Id. Plaintiff also asserted that $24,598 of earnings which had been attributed to him in 2006 were in fact not his earnings, and that he had reported that fact to the Social Security Administration. Tr. 385-86. He also explained that he had not been able to afford his insulin or other medications, because he could not sustain work long enough to keep paying for them. Tr. 388. He denied having used illegal drugs for the last year and a half to two years, and indicated that he could

5

now obtain insulin through the use of a clinic card provided by Nueces County. Tr. 388-89. He was now taking insulin as prescribed and following a diabetic diet, but continued to get ulcers. Tr. 389-90. He had two toes amputated from his right foot, and half of his left foot was gone. Tr. 390. This caused him to lose his balance frequently. Id. He said that he could wash dishes at home, but only if he sat down while doing so. Tr. 393. He could not stand for more than fifteen minutes at a time, and could walk no more than a block. Tr. 394.

The ALJ posed a hypothetical of an individual with plaintiff's past work experience and impairments, and the vocational expert testified that he could not return to his past relevant work working in a fast food restaurant. Tr. 396-97. The VE testified that plaintiff could perform sedentary unskilled work, such as telephone clerk, addresser or labeler, optical goods worker, polisher, or assembler, and indicated that there sufficient numbers of these jobs available in the Texas economy. Tr. 398-99. She testified that the plaintiff could do these jobs, even if he needed to elevate his feet on a footrest, or needed to wear a walking boot. Tr. 400. Upon cross-examination, the VE admitted that plaintiff would be subject to termination if he missed more than two days a month on a consistent basis, or could not work a full eight hours due to inability to concentrate or pain. Tr. 401.

### D. The ALJ's Decision.

The ALJ concluded that plaintiff suffered from the severe impairments of a substance abuse disorder and diabetes mellitus with amputation of the first and second toes of his right foot. Tr 13. He found that plaintiff's diabetes did not meet the severity listing because there was no evidence of significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. Tr 14. The ALJ determined that plaintiff could not perform his past work working in a fast food restaurant, but retained the ability to perform sedentary work with certain restrictions. Tr 14. He found that plaintiff's credibility was reduced because he was not compliant with his diabetes treatment, and because he had a history of

illicit drug use. Tr 15.

### III.  LEGAL STANDARDS.

####   A.    Standard of Review.

In a Social Security case, the scope of judicial review is limited to a determination of whether the ALJ's decision to deny benefits is supported by substantial evidence and whether the proper legal standard was applied. Kinash v. Callahan, 129 F.2d 736, 738 (5th Cir. 1997).

Substantial evidence means more than a scintilla but less than a preponderance. Haywood v. Sullivan, 888 F.2d 1463, 1466 (5th Cir. 1989). Substantial evidence is relevant evidence that a reasonable mind would accept as sufficient to support a conclusion. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir.1994).

In determining whether substantial evidence exists, the court does not reweigh the evidence, retry the issuers, or substitute its own judgment. Greenspan, 38 F.3d at 236. Rather, the Court reviews the ALJ's conclusions *de novo* and ensures that the correct legal standard was utilized by the administrative court. Id.

The Commissioner's decision is granted great deference. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). Accordingly, the absence of substantial evidence will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Findings of fact which are supported by substantial evidence are conclusive. Martinez v. Chater, 64 F.3d 172, 173, (5th Cir. 1995).

####   B.    Evaluation of disability.

To prevail on a claim for disability benefits, a claimant must establish a physical or mental impairment lasting at least twelve months that prevents her from engaging in any substantial gainful

activity. 42 U.S.C. § 416(i)(1), 423 (d)(1)(A)[2]; Cook v. Heckler, 750 F.2d 393, 393 (5th Cir. 1985). To determine whether substantial gainful activity is possible, the Commissioner uses a five-step sequential inquiry. Martinez, 64 F.3d at 173-74. The five steps are:

(1) whether the claimant is presently working;

(2) whether the claimant's ability to work is significantly impaired by a physical or mental impairment;

(3) whether the claimant's impairment meets or equals an impairment listed in Appendix 1 to the regulations;

(4) whether the impairment prevents the claimant from doing past relevant work; and

(5) whether the claimant cannot presently perform relevant work that exists in significant numbers in the national economy.

Martinez, 64 F.3d at 173-74. See 20 C.F.R. §§ 404.1520, 416.920.

A finding that a claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the Commissioner's analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. denied, 514 U.S. 1120, 115 S. Ct. 1984 (1995),(citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Greenspan, 38 F.3d at 236 (citing Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam). Under the Regulations, this means that the claimant bears the burden on the first four steps of the sequential analysis. Greenspan, 38 F.3d at 236 (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987). If the claimant carries his burden, the burden then shifts to the Commissioner to show that the claimant is capable of performing substantial gainful activity and is

---

[2] The same law and regulations govern whether an individual is considered disabled and therefore entitled to benefits under either the DIB or the SSI provisions of the Social Security Act. Haywood v. Sullivan, 888 F.2d 1463, 1467 (5th Cir. 1989) (per curiam) (citations omitted).

therefore not disabled. Greenspan, 38 F.3d at 236. If the Commissioner adequately points to potential alternative employment, the burden shifts back to the plaintiff to prove that he is unable to perform the alternative work. Selders v. Sullivan, 914 F.2d 614, 618 (5th Cir. 1990) (quoting Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987)); Anderson v. Sullivan, 887 F.2d 630, 632 (5th Cir. 1989).

## IV.   ANALYSIS.

### A.   Sequential evaluation and plaintiff's objections.

#### 1.   Gainful employment.

At the first step of the sequential evaluation process, the ALJ found that plaintiff had engaged in substantial gainful activity in 2005 and 2006. Tr 3. Plaintiff objects to this finding, and indeed, it is not supported by the substantial evidence.

Relying on plaintiff's earning records, Tr 104-110, the ALJ found that plaintiff had been employed by a company called Gold Kist, Inc., and that Gold Kist had paid him $24,598.05 in 2006, and $1,700.62 for two months in 2005. Tr 3. Based on this data combined with other earnings, the ALJ concluded that plaintiff had been gainfully employed in 2005 and 2006. Id.

This conclusion was in error, however, because plaintiff testified specifically that he had never worked for a company named Gold Kist, and he had notified the SSA of such. Tr 382-83. In addition, as noted by the ALJ, Gold Kist is a peanut and poultry marketing firm based in Atlanta, Georgia. Tr 3. Although Gold Kist has operations in Texas via Pilgrim Pride poultry, there is no evidence in the record that plaintiff ever worked for Pilgrim Pride. Indeed, on his work history report, Tr 123, plaintiff listed ten prior jobs, none of which he held for over a year. Id. Had he worked for Gold Kist or Pilgrim Pride for 14 months, earning over ten times what he has earned in the past, there is no doubt he would have recalled such employment.

In determining whether a claimant's earnings show that he is capable of engaging in substantial gainful activity, only the income that is actually earned by the claimant is considered. 20 C.F.R. §

404.1574(a)(2). The regulations include only "earnings which are *presumed* to be evidence of substantial gainful activity. This presumption, if left unrebutted by the claimant, negates a finding as [to] the *inability* to engage in substantial gainful activity." (citation omitted) (emphases in original). White v. Heckler, 740 F.2d 390, 394 (5th Cir. 1984). However, a claimant may rebut the presumption with evidence that he could not maintain employment. See Shutt v. Secretary, 490 F.2d 43, 47-48 (5th Cir. 1974) ("[claimant's] 'sporadic and transitory activities may demonstrate not his ability, but his inability to engage in substantial gainful activity'") (citation omitted). The nature of claimant's work and the adequacy of his performance are also relevant to the inquiry of whether he engaged in substantial gainful activity. Id. at 47 (citing 20 C.F.R. § 404.1532).

Here, the only evidence to suggest that plaintiff worked for Gold Kist is an entry in plaintiff's earnings record. Plaintiff reported the entry as an error to the SSA office, testified before the ALJ that he never worked for Gold Kist, and never listed Gold Kist or a subsidiary on his employment history. He successfully rebutted the presumption of earnings from this company. Accordingly, the ALJ's finding that plaintiff engaged in substantial gainful activity in 2005 and 2006 is not supported by the substantial evidence.

### 2. Severity of impairment.

At the second step of the sequential evaluation process, the ALJ evaluates the severity of the impairment. A severe impairment is defined as any medically-determinable condition which significantly limits the ability to perform work-related functions. 20 C.F.R. §§ 404.1520, 416.924.

Here, the ALJ identified plaintiff's severe impairments as substance abuse disorder and diabetes mellitus with amputation of the first and second toes of the right foot. Tr. 13. These findings are supported by the substantial evidence as to the right foot and the substance disorder. However, the findings are incomplete in that the ALJ failed to include the amputations to plaintiff's left foot, the associated diabetic neuropathy, and associated pain complained of by plaintiff.

There is substantial evidence of substance abuse in the record. Plaintiff admitted to his doctors that he has used cocaine to control his pain; his doctors have reported a history of alcohol abuse; and he has admitted to his doctors that he smokes marijuana daily. Tr. 179, 201, 220.

In addition, the medical evidence before the ALJ established amputations on *both* plaintiff's *right* and *left* feet, and that plaintiff experienced diabetic foot ulcers. (Tr 14, 177, 179, 187, 202-206, 208, 220, 235-237, 262, 268, 281, 298, 306, 308, 328, 332, 339-340, 342, 348, 359, 384, 390). Indeed, the ALJ characterized as severe the amputation of two toes on plaintiff's right foot, but failed to include as a severe impairment, plaintiff's left transmetatarsal amputation which, objectively, was more severe, involving the amputation of over half of his left foot. See Tr 364. Dr. Rodriguez testified that, as a result of the bilateral amputations, plaintiff's gait is abnormal. Tr 266. Plaintiff has peripheral neuropathy, poor pulses in both stumps and decreased sensation in both feet. Tr. 27. He regularly develops ulcers and experiences cellulitis on the left foot, and has repeatedly been admitted to the hospital to have his left foot drained. Tr 235, 281, 364, 365. He wears a boot, but has been unable to purchase a prosthetic advice. Tr 391. His doctors advice has been to avoid standing. Tr 385. Plaintiff's left transmetatarsal amputation is a severe impairment, and the ALJ erred in failing to recognize it as such.

In addition, plaintiff complained of severe pain. Under the Regulations, pain and other subjective symptoms may themselves be disabling, as long as there exists a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. §§ 404.1529, 416.929. Once such an impairment is established, the ALJ must make affirmative findings regarding a claimant's subjective complaints including the intensity and the persistence of the pain or other symptoms. Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Selders, 914 F.2d 614, 618-19 (5th Cir. 1990); Cook v. Heckler, 750 F.2d 391, 395 (5th Cir. 1985).

Here, the objective medical evidence shows that, during the four years at issue, plaintiff has

11

repeatedly had uncontrolled blood sugars, cellulitis, foot ulcers that need to be drained, degenerative back issues and bone problems associated with his overall poor health. In addition, he often turned to alcohol or street drugs in an attempt to self medicate and control his pain. Plaintiff testified to increased pain the longer he was on his feet. Although he would attempt to work, he would develop ulcers that would lead to hospitalizations, missed work, and ultimately, the loss of his job. Thereafter, he would be unable to afford his medication, leading to substance abuse. The evidence supports a finding that plaintiff's pain is a severe impairment.

### 3.   Listed impairment.

At the third step of the evaluation process, the ALJ is required to discern whether the severe impairment(s) meets the duration requirements and meets or equals a listed impairment in the Regulations. See 20 C.F.R. §§ 404.1520(d), 416.920(d). The question of whether plaintiff meets or equals a listed impairment is a medical determination, and conjecture does not play a role in the determination. Ellison v. Sullivan, 929 F.2d 534, 536 (10th Cir. 1990).

In this case, the ALJ determined that plaintiff's impairments of substance abuse, toe amputations of the right foot, and diabetes did not meet or equal a listed impairment. Tr 14, finding no. 4. In support of this finding, the ALJ noted that plaintiff's diabetes did not meet a severity listing because there was no evidence of significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movement or gait. Tr. 14; see also 20 C.F.R. Pt. 404, Subpt. P., App. 1, Rule 9.08 (listing diabetes mellitus as an impairment). Plaintiff objects to this finding, arguing that the ALJ failed to find his left metatarsal amputation to be a severe impairment, and additionally, he failed to consider the combination of his impairments.

The Supreme Court has explained that "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed

impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (citing 20 C.F.R. § 416.926(a)) (emphasis in original). A claimant's disability is equivalent to a listed impairment if the medical findings are at least equal in severity and duration to the listed findings. See 20 C.F.R. § 404.1526(a). Nonetheless, "[a] claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." Zebley, 493 U.S. at 531 (citation omitted). Equivalence is an issue of fact ultimately reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); Hector v. Barnhart, 337 F. Supp.2d 905, 915 (S.D. Tex. 2004) (citing Knepp v. Apfel, 204 F.3d 78, 85 (3rd Cir. 2000)).

Here, the ALJ failed to consider all of the relevant evidence in determining whether plaintiff's severe impairments met or equaled a severe impairment. First and foremost, as discussed above, the ALJ failed to include plaintiff's left transmetatarsal amputation as a severe impairment, and this fundamental error rendered the rest of his analysis in error.

In addition, the ALJ did not consider Dr. Larkin's diagnosis of "severe peripheral neuropathy" and her observations of poor peripheral pulses and insensate plantar feet bilaterally. Tr. 354. Also, at the August 2007 hearing, the medical expert testified that plaintiff had undergone several amputations of the *left* foot, including the first and second toe, Tr 375, but failed to address the *right* foot, the foot that the ALJ based his severity determination on. Tr 13. The ME testified that plaintiff would *not* have problems with his gait and station. Tr 383. This testimony is in direct contrast with that of Dr. Rodriguez who, correctly considering the amputations on both feet, found that plaintiff's gait would necessarily be affected by the amputation of his toes on his right foot, and the amputation of half of his left foot. Tr 265-266. Dr. Rodriguez specifically noted that "[plaintiff's] gait is limited due to the loss of the toes in [his] left foot and also because he is still having small ulceration that is draining." Tr. 266.

The decision at step 3 is a medical determination. The ALJ's conclusion that plaintiff's diabetes did not meet or medically equal the listing in Rule 9.08 did not properly consider all the objective medical evidence of plaintiff's impairments and his subjective complaints of disabling pain. As such, remand is necessary so that additional facts can be considered to determine if plaintiffs severe impairments, alone or in combination, rendered him *per se* disabled under the Regulations from June 1, 2004 through November 19, 2007.

## V. CONCLUSION.

The substantial medical evidence establishes that plaintiff suffers from diabetes mellitus with amputation of his first and second toes of the right foot and left transmetatarsal amputation, severe peripheral neuropathy, substance abuse disorder and pain. In determining whether plaintiff meets a listing under the regulations, the ALJ failed to consider all of plaintiff's severe impairments that are supported by the substantial medical evidence, such that remand under sentence 4 is appropriate. Accordingly, defendant's motion for summary judgment (D.E. 11) is DENIED. Plaintiff's motion for summary judgment (D.E. 13) is GRANTED, and the decision of the Commissioner is reversed. This case is remanded pursuant to sentence four of 42 U.S.C. § 405(g).

SIGNED this 24th day of October, 2008.

_____
Janis Graham Jack
United States District Judge